IN RE INTEREST OF COREY RICHTER, A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. COREY RICHTER, APPELLANT.
415 N.W.2d 476

Filed November 20, 1987.    No. 87-256.

Charles F. Fitzke, Scotts Bluff County Public Defender, for appellant.

Douglas Warner, Deputy Scotts Bluff County Attorney, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

CAPORALE, J.

The county court sitting as a juvenile court found that the juvenile, Corey Richter, violated the provisions of Neb. Rev. Stat. § 28-906(1) (Reissue 1985) by obstructing peace officers, as a consequence of which the court had jurisdiction pursuant to the provisions of Neb. Rev. Stat. § 43-247(1) (Cum. Supp. 1986). The county court thereupon committed Richter to the

care and custody of the Department of Correctional Services for placement at the Youth Development Center-Kearney. Richter then appealed to the district court. That court affirmed the judgment of the county court, and Richter appealed to this court. His assignment of error questions the sufficiency of the evidence to support a finding that he obstructed the officers. We affirm.

Section 43-247(1) provides that the juvenile court shall have jurisdiction of any juvenile "who has committed an act . . . which would constitute . . . an infraction under the laws of this state . . . ." Section 28-906(1) provides that one

> commits the offense of obstructing a peace officer, when, by using or threatening to use violence, force, physical interference, or obstacle, he intentionally obstructs, impairs, or hinders the enforcement of the penal law or the preservation of the peace by a peace officer . . . acting under color of his official authority.

Richter had been staying with his grandmother who, on October 20, 1986, asked the police to remove him from her home. Officers Mike Brunz and Douglas French, both in uniform, went to the grandmother's home in a marked police car to so do. As they approached the home, they could hear Richter arguing with and cursing and yelling at his mother. Officer French told Richter they were going to take him to a youth shelter for the evening. Richter ran away as the officers were escorting him to their automobile. Officer French then pursued Richter on foot, but lost sight of him. The officers found Richter approximately an hour later near his grandmother's home. Upon seeing the officers Richter started to flee again, but returned peacefully after his mother yelled for him to stop. No physical restraints were ever placed on Richter, nor did Richter ever resort to force.

Richter first argues he did not violate § 28-906(1) for the reason that the officers were engaged neither in enforcing the penal law nor in preserving the peace. While a penal statute is to be construed strictly, it is to be given a sensible construction in the context of the object sought to be accomplished, the evils and mischiefs sought to be remedied, and the purpose sought to be served. *State v. Burke*, 225 Neb. 625, 408 N.W.2d 239 (1987);

*State v. Lynch*, 223 Neb. 849, 394 N.W.2d 651 (1986). Moreover, in the absence of anything indicating to the contrary, statutory language is to be given its plain and ordinary meaning. *State v. Palmer*, 224 Neb. 282, 399 N.W.2d 706 (1986). "Preservation of the peace," as used in § 28-906(1), means maintaining the tranquillity enjoyed by members of a community where good order reigns. See *State v. Sukovaty*, 178 Neb. 779, 135 N.W.2d 467 (1965). It can hardly be said that officers engaged in removing from the scene one who was arguing with and yelling and cursing at his mother were not engaged in preserving the peace, irrespective of what brought them to the scene in the first instance. Since obstructing an officer engaged in preserving the peace constitutes a violation of § 28-906(1), we need not consider whether the officers were at the same time enforcing the penal law.

Richter next argues that in order to establish a violation of § 28-906(1), the State must establish that he used, or threatened to use, some physical means to thwart the officers; that simply running away is not such an act and therefore does not violate the statute.

While cases from other jurisdictions can be found which hold that flight alone violates similar statutes, *State v. Jarvis*, ____ W. Va. ____, 310 S.E.2d 467 (1983), and *Tankersley v. State*, 155 Ga. App. 917, 273 S.E.2d 862 (1980), and which suggest to the contrary, *People v Landrie*, 124 Mich. App. 480, 335 N.W.2d 11 (1983), *disavowed on other grounds People v Wells*, 138 Mich. App. 450, 360 N.W.2d 219 (1984), they are not particularly helpful, for each statute employs different language. To the extent relevant to this case, § 28-906(1) prohibits the use or threat of "violence, force, physical interference, or obstacle" which intentionally "obstructs, impairs, or hinders" the preservation of the peace. Even if the word "physical" modifies "obstacle," as well as "interference," the act of running away was a "physical" obstacle in the sense that it was an act which had material, substantive, and objective existence. *Clemmons v. Insurance Co.*, 2 N.C. App. 479, 163 S.E.2d 425 (1968); Webster's Third New International Dictionary, Unabridged 1706 (1981). Since the physical obstacle interposed by the act of running away

obstructed, impaired, or hindered the officers' efforts to preserve the peace, Richter committed an infraction of a law of this state, and the juvenile court had jurisdiction over him.

AFFIRMED.