**Adrian Ramon ORTIZ, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–9611.**

Court of Appeals of Alaska.

Nov. 16, 2007.

Brian T. Duffy, Anchorage, and Joshua P. Fink, Public Advocate, Anchorage, for the Appellant.

Diane L. Wendlandt, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Talis J. Colberg, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

### *OPINION*

COATS, Chief Judge.

Adrian Ramon Ortiz was convicted of one count of robbery in the first degree,[1] and he was ordered to pay restitution to the victims of this robbery.

Superior Court Judge Philip R. Volland conducted the restitution hearing. In a written motion, Ortiz argued that his restitution obligation should be governed by the version

---

**1.** AS 11.41.500(a)(1) and/or (3).

of AS 12.55.045 that was in effect at the time he committed his offense.

In 2003, when Ortiz committed the robbery, AS 12.55.045 gave a sentencing judge discretion as to whether to order restitution, and it further allowed the sentencing judge to consider, if certain conditions were met, the defendant's ability to pay the proposed restitution.[2] But in 2004, the Alaska Legislature amended the statute in two key ways. First, the legislature removed a sentencing judge's discretion to grant or withhold restitution; the statute now requires the judge to order restitution unless the victim expressly waives restitution.[3] Second, the legislature eliminated a sentencing judge's authority to consider the defendant's ability to pay when setting the total amount of restitution.[4]

Ortiz's attorney argued that application of the new statutory provisions to Ortiz would violate the *ex post facto* clause. Thus, the attorney asserted that Judge Volland was required to apply the 2003 version of the statute and, therefore, Ortiz's ability to pay was relevant to setting the amount of restitution.

Judge Volland rejected this argument and concluded that he was obliged to apply the current version of the statute.[5] That is, Judge Volland ruled that he was precluded from considering Ortiz's ability to pay restitution when setting the amount of the restitution. Ultimately, Judge Volland ordered that Ortiz and his co-defendants be jointly and severally liable for $103,226.85 in restitution.

Ortiz appeals this decision, renewing his argument that the *ex post facto* clause prohibited Judge Volland from applying the 2004 version of the restitution statute.

*Why we conclude that application of the 2004 statute to Ortiz violates the ex post facto clause*

The United States Constitution forbids any state from passing an *ex post facto* law.[6] Similarly, the Alaska Constitution forbids the imposition of *ex post facto* laws.[7] Ortiz does not specify which constitutional provision he is claiming the benefit of, but that is immaterial—because the Alaska Supreme Court has held that there is no distinction between state and federal law on this issue.[8]

■ The *ex post facto* clause forbids a legislature from enacting "any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission; or which deprives one charged with a crime of any defense available according to law at the time when the act was committed."[9] We have summarized this definition as forbidding "the retrospective application of laws that 'alter the definition of crimes or increase the punishment for criminal acts.'"[10]

■ The fact that a criminal statute is retrospective does not necessarily mean that it is a prohibited *ex post facto* law.[11] "The threshold question we must answer when deciding if [this statute] is an *ex post facto* law is whether [the statute's] provisions ...

---

**2.** Former AS 12.55.045(a) (2003) & former AS 12.55.045(f), (g) (2003), *respectively*.

**3.** AS 12.55.045(a), *as amended by* ch. 17, § 1, SLA 2004.

**4.** AS 12.55.045(g), *as amended by* ch. 17, § 3, SLA 2004.

**5.** *Id.*

**6.** U.S. Const. art. I, § 10.

**7.** Alaska Const. art. I, § 15.

**8.** *State v. Creekpaum*, 753 P.2d 1139, 1143 (Alaska 1988).

**9.** *State v. Anthony*, 816 P.2d 1377, 1378 (Alaska 1991) (*quoting Dobbert v. Florida*, 432 U.S. 282, 292, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344 (1977)).

**10.** *Amin v. State*, 939 P.2d 413, 416 (Alaska App. 1997) (*quoting Collins v. Youngblood*, 497 U.S. 37, 43, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990)).

**11.** *See Anthony*, 816 P.2d at 1378 ("The mere fact that [a statute] alters a convicted felon's circumstances to his or her disadvantage does not in itself invalidate the statute as ex post facto."); *see also Stoneking v. State*, 39 P.3d 522, 524 (Alaska App.2002) ("a statute is not illegally retrospective merely because it upsets expectations or operates to the disadvantage of individual defendants.").

increase the quantum of punishment" Ortiz received for his conviction.[12]

Several federal circuit courts of appeal have addressed the question of whether the *ex post facto* clause is violated by retrospective application of a restitution statute that forbids a sentencing court from considering the defendant's ability to pay. In 1996, Congress passed the Mandatory Victims Restitution Act of 1996 (MVRA).[13] The MVRA made restitution mandatory for certain offenses, and it also required a sentencing court to order full restitution for the victim's losses, irrespective of the defendant's ability to pay.[14]

Because the MVRA superseded a prior restitution statute that required sentencing courts to consider a defendant's ability to pay, application of the MVRA to defendants whose offenses pre-dated the enactment of this statute raised a question under the *ex post facto* clause. The federal circuits reached differing answers to this question.

The majority of the circuits [15] have concluded that retrospective application of the MVRA violates the *ex post facto* clause of the United States Constitution, "because restitution imposed as part of a defendant's sentence is criminal punishment, not a civil sanction, and the shift from discretionary to mandatory restitution increases the punishment meted out to a particular defendant." [16]

The minority view is set out in *United States v. Newman.*[17] In *Newman*, the Seventh Circuit concluded that, even though the new restitution provision operated to the de-fendant's detriment, this detriment did not create an *ex post facto* violation.[18] The court concluded that the primary purpose of restitution under the MVRA was not to punish criminals, but rather to compensate victims and to force "wrongdoers to surrender ill-gotten gains." [19] Thus, the court held that restitution was not a "criminal punishment" for purposes of the *ex post facto* clause—and, therefore, retroactive application of the restitution provisions of the MVRA did not violate this clause.[20]

Thus, the majority of the federal courts which have addressed this question have held that the provision of the MVRA which forbids a sentencing judge from considering the defendant's ability cannot be applied retroactively, while a minority of federal courts have concluded that this provision is not punitive and therefore can be imposed retroactively without violating the *ex post facto* clause.

The State urges us to adopt the minority view represented by the *Newman* decision. The State argues that the intent of the 2004 amendments to Alaska's restitution statute was primarily to compensate victims of a crime rather than to punish the defendant, and to make restitution orders in criminal cases equivalent to the civil judgments that victims might obtain if they sued the defendants.

We reject the State's argument because we conclude that restitution is a hybrid remedy. It is true, as the State asserts, that one primary purpose of restitution is to compensate victims for the harm done by the defen-

---

**12.** *Patterson v. State*, 985 P.2d 1007, 1011 (Alaska App.1999), *overruled on other grounds by Doe v. State, Dept. of Public Safety*, 92 P.3d 398 (Alaska 2004). *See also Smith v. Doe*, 538 U.S. 84, 92, 123 S.Ct. 1140, 1146–47, 155 L.Ed.2d 164 (2003) (stating that the framework for this inquiry is well-established by United States Supreme Court precedent).

**13.** Title 2, Subtitle A of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (codified in relevant part at 18 U.S.C. §§ 3663A, 3664).

**14.** 18 U.S.C. § 3663(A)(1) & 18 U.S.C. § 3664(f)(1)(A), *respectively.*

**15.** *See United States v. Edwards*, 162 F.3d 87, 88 (3d Cir.1998); *United States v. Siegel*, 153 F.3d 1256, 1260 (11th Cir.1998); *United States v. Bapack*, 129 F.3d 1320, 1327 n. 13 (D.C.Cir.1997); *United States v. Williams*, 128 F.3d 1239, 1241 (8th Cir.1997); *United States v. Baggett*, 125 F.3d 1319, 1322 (9th Cir.1997); *United States v. Thompson*, 113 F.3d 13, 15 n. 1 (2d Cir.1997).

**16.** *Edwards*, 162 F.3d at 89 (citations omitted).

**17.** 144 F.3d 531 (7th Cir.1998).

**18.** *Id.* at 537, 542.

**19.** *Id.* at 542.

**20.** *Id. See also United States v. Bach*, 172 F.3d 520, 523 (7th Cir.1999); *United States v. Nichols*, 169 F.3d 1255, 1279–80 (10th Cir.1999).

dant's criminal act. But a restitution order in a criminal case differs significantly from a judgment that a victim might obtain against a defendant in a civil lawsuit.

The most obvious difference is that, when a court orders a defendant to pay restitution, the defendant faces imprisonment for willful failure to pay the restitution.[21] Unless the defendant can establish that he "was unable to pay despite having made continuing good faith efforts to pay the ... restitution," the court has the authority to imprison the defendant by revoking his probation, finding him in contempt, or ordering him "imprisoned until the order of the court is satisfied."[22]

Moreover, the sentencing court's authority to imprison the defendant for willful non-payment is directly proportional to the amount of restitution that the defendant has been ordered to pay. Subsection (a) of AS 12.55.051, which governs enforcement of restitution orders, declares that the sentencing court is authorized to imprison the defendant for a term that "may not exceed one day for each $50 of the unpaid portion of the ... restitution or one year, whichever is shorter."[23]

Additionally, when a defendant is imprisoned for willful non-payment of a restitution order, the defendant must receive "[c]redit ... toward satisfaction of the [restitution] order ... for every day [the defendant] is incarcerated for nonpayment."[24] This provision most strikingly demonstrates the underlying penal nature of the restitution order. A victim is not compensated by having the defendant spend time in jail. In fact, because the defendant must receive credit for every day spent in jail, the very opposite occurs: the victim actually *loses* compensation when the defendant is imprisoned for willful non-payment of the restitution obligation.

These provisions of AS 12.55.045 and AS 12.55.051 demonstrate that, even though restitution orders may further the aim of compensating the victim, these orders also have penal characteristics that cannot be ignored. Under Alaska law, the restitution order in a criminal case differs substantially from the money judgment that a victim might obtain against the defendant in a civil lawsuit.

 We therefore conclude that retrospective application of the Alaska restitution statute violates the *ex post facto* clause.

Accordingly, we VACATE the restitution order in Ortiz's case, and we direct the superior court to re-evaluate the question of restitution, applying the version of the restitution statute that existed at the time Ortiz committed his offense.

We do not retain jurisdiction of this case.

---

**21.** AS 12.55.051(a).

